IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH R. ABRAHAM, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civ. No. 07-593-SLR ) |
| LT. COSTELLO and OFFICER CPL. MANN, | ) ) ) ) |
| Defendants. | ) ) ) |

Daniel M. Attaway, Esquire and Thatcher A. Rahmeier, Esquire of Connolly, Bove, Lodge & Hutz, LLP of Wilmington Delaware. Counsel for Plaintiff.

Catherine C. Damavandi, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: May 17, 2012
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Kenneth R. Abraham ("plaintiff"), a former Delaware Department of Correction ("DDOC") inmate, filed a pro-se complaint against numerous defendants on September 26, 2007. (D.I. 2) In accordance with the screening procedures set forth in the Prison Litigation Reform Act ("PLRA"),[1] the court reviewed plaintiff's complaint and determined that he could move forward on his 42 U.S.C. § 1983 excessive force claims against Officer Cpl. Mann ("Mann") and Lt. Costello ("Costello") (collectively "defendants"). (D.I. 12) Currently pending before the court is defendants' second motion for summary judgment. The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court denies defendants' motion.

## II. BACKGROUND

### A. Alleged Incident of Excessive Force

Plaintiff was initially incarcerated in early 2007 in the Central Violation of Probation Unit ("CVOP") of the DDOC. On April 29, 2007, plaintiff was transferred from the CVOP to the Sussex Violation of Probation Unit ("SVOP") in Georgetown, Delaware. (D.I. 2 at ¶ 104; D.I. 168 at 8-9) SVOP is a sanction facility; in other words, it handles problematic inmates from other facilities by sanctioning them with extra work requirements. (D.I. 168 at 166-69). For instance, inmates that act out at SVOP are required to crush aluminum cans or roll logs. (*Id.*) More specifically, SVOP has what are called Extra Work Incentives ("EWI") which are "immediate sanctions for negative behavior . . . designed to provide a workable outlet for physical or aggressive

---

[1] *See* 28 U.S.C. § 1915A

tendencies that [an inmate] might otherwise direct toward staff or [another inmate]." (D.I. 172 at Ex. 7, pg. 1)

On May 10, 2007, after an incident in the SVOP chow hall, plaintiff was led into a courtyard and instructed by prison guards to perform EWI. (D.I. 172 at Ex. 3, pg. 29-32; 51-52) In particular, he was told to roll a log. (*Id.* at 51-52) He refused, which prompted the guards to summon their superior, Costello. Costello arrived and ordered plaintiff to roll the log. (*Id.* at 56) Plaintiff again refused, saying "I won't be rolling the log."[2] (*Id.*) This led Costello to ask plaintiff several times why he was refusing to roll the log. (*Id.* at 56-57) Eventually plaintiff said something along the lines of: "It's because I want to see what you are going to do." (*Id.* at 57-58) In other words, plaintiff wanted to observe the officers' reactions to his refusal.[3] In response to this, Costello informed plaintiff that he was going to Cap-stun[4] (i.e., pepper spray) him if he failed to roll the log by the count of three. (*Id.* at 59) Costello did Cap-stun plaintiff[5] and then, according to plaintiff, defendants threw him down onto the asphalt and kicked him repeatedly in both the head and back. (*Id.* at 60-61) When plaintiff tried to stand, he claims that Costello

---

[2] Plaintiff agrees that he "deliberately, intentionally [and] willfully refused [the] order[s] to roll the log." (D.I. 168 at 46)

[3] According to plaintiff, he had heard that the officers at the SVOP were "out of control [and] breaking the law willy nilly" by beating defenseless inmates. (D.I. 172 at Ex. 3, pgs. 58-59) Plaintiff also claims that he intentionally had himself transferred from CVOP to SVOP in order to investigate the alleged abuses occurring there. (D.I. 168 at 8-9)

[4] Capt-stun is the trade name of a pepper spray used by the DDOC. (D.I. 171 at 1, n. 1)

[5] According to plaintiff, Costello Cap-stunned him on the count of two (not three) "for what seemed like quite a long time." (D.I. 172 at Ex. 3, pg. 60)

2

said he would Cap-stun him every hour, on the hour, until he rolled the log; to this, plaintiff responded "make my day." (*Id.* at 77-78) No more sprays were administered and plaintiff was eventually examined by a nurse. (*Id.*) Plaintiff claims that he was handcuffed and his ankles were shackled during this incident. (*Id.* at 49; 51)

## B. The DDOC's Grievance Reporting Procedure and Plaintiff's Attempt to Comply

Policy 4.4 of the DDOC establishes an Inmate Grievance Procedure ("IGP"). (D.I. 100 at 5) The policy was designed to "effectively resolve the vast majority of [prisoner complaints]" by providing "a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions are filed." (*Id.*) "The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward [the form] to the [Inmate Grievance Chair]," a DDOC employee designated to handle grievances. (*Id.* at 9)

Following the May 10, 2007 incident, in an attempt to report the conduct of defendants, plaintiff claims he repeatedly, both orally and in writing, asked for a grievance form (presumably Form #584). (D.I. 172 at Ex. 3, pgs. 134-36; D.I. 104 at 1; D.I. 105 at 2) He was never provided one and, therefore, he failed to file in accordance with the formal grievance procedures. (*Id.*) He, however, did send a letter to the SVOP Warden and the Commissioner of Correction (Carl Danberg). (D.I. 172 at Ex. 3, pgs. 135, 139; D.I. 168 at 52-58) These letters resulted in DDOC internal investigators coming to speak with plaintiff about the incident; plaintiff refused to speak with them, believing they would not help his cause (D.I. 168 at 35-38)

3

On September 20, 2007, plaintiff received a letter from Commissioner Danberg informing him that a "lengthy and thorough investigation" revealed no evidence that excessive force was used. (D.I. 172 at Ex. 2) Plaintiff filed the instant action six days later.

### C. The Court's Previous Summary Judgment Ruling

In a June 11, 2010 opinion and order, the court resolved competing summary judgment motions. (D.I. 105; 106) In their original summary judgment motion, defendants argued that plaintiff failed to exhaust his administrative remedies as required by the PLRA. (D.I. 105 at 4) Plaintiff argued in response that he repeatedly requested grievance forms to no avail and, therefore, the grievance process was not available to him. (*Id.*) The court agreed, finding that plaintiff was "excused for his failure to exhaust inasmuch as he was not provided grievance forms despite his repeated written and oral requests." (*Id.* at 5)

Plaintiff's one-page, handwritten, summary judgment motion argued that he was entitled to judgment since defendants failed to deny, dispute or refute any of the claims he made under oath in his complaint. (*Id.* at 6) While defendants did not respond to plaintiff's motion, the court concluded that, on the discovery provided to the court, an issue of fact remained with respect to the events of May 10, 2007. (*Id.* at 7) Specifically, the court found that there existed a dispute as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm to plaintiff." (*Id.*) In coming to this decision, the court noted that defendants, in their brief in support of their summary judgment motion, stated that:

4

"Because there is a dispute of fact on whether excessive force was used on Plaintiff, this factual issue must be decided by a jury." (D.I. 99 at 1; D.I. 105 at 6)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails

to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Defendants argue two points in their second motion for summary judgment. First, defendants contend that their use of pepper spray under the facts presented does not, as a matter of law, constitute excessive force. Second, defendants reassert their previous argument regarding plaintiff's failure to exhaust administrative remedies under the PLRA.

### A. Excessive Force

"The test for whether a claim of excessive force is constitutionally actionable [under the Eighth Amendment's ban on cruel and unusual punishment] is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)); see also Wilkins v. Gaddy, - U.S., - , 130 S.Ct. 1175, 1178 (2010) (noting that the "core judicial injury" in prisoner excessive force cases is "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"). "The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of

6

the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles*, 571 F.3d at 326.

With this standard and these factors in mind, Costello argues that his use of Cap-stun did not constitute excessive force. (D.I. 167 at 1-7) In doing so, Costello attempts to divorce the Cap-stuning from the remainder of the incident. The court refuses to do so. The excessive force claim will be analyzed with reference to the entire incident, which includes both the Cap-stun and plaintiff's allegedly being throw onto the ground and kicked repeatedly while handcuffed and shackled.[6] As the defendants and the court have already noted, there is a genuine issue of fact with respect to whether force was used in a constitutionally permissible manner on May 10, 2007.

## B. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison

---

[6] To the extent that Cap-stun was used in a reasonable manner to enforce disciplinary rules against an inmate intentionally defying such rules (or admittedly attempting to provoke a reaction from prison officials), the court agrees with defendants that such use would not, as a matter of law, constitute excessive force. *See Piper v. Kearney*, Civ. No. 05-341, 2006 WL 3543273, at *2 (D. Del. Dec. 1, 2006) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) and *Whitley v. Albers*, 475 U.S. at 321) (finding the use of Cap-stun against an inmate that refused a direct order to be constitutionally permissible and noting that "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. This includes measures taken by prison officials to prevent a disturbance or threat to institutional security.") (quotations and citations omitted); *see also Johnson v. Berezansky*, Civ. Nos. 03-562 & 03-710, 2005 WL 1026723, at *3 (D. Del. Apr. 28, 2005) (finding an officer's use of Cap-stun against an inmate that "merely fail[ed] to follow instructions" to be constitutionally permissible). After testimony is presented at trial and the court has a better sense for the specifics surrounding the Cap-stunning portion of this incident, appropriate instructions can and will be presented to the jury.

7

conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. Ray v. Kertes, 285 F.3d 287, 295-96 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88 (2006); see also Nickens v. Department of Corr., 277 Fed. Appx. 148, 152 (3d Cir. 2008) (not published) (citing Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) and Spruill v. Gillis, 372 F.3d 218, 228, 231 (3d Cir. 2004)) (noting that a prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA.). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." Williams, 482 F.3d at 639 (quoting Spruill, 372 F.3d at 231). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill, 372 F.3d at 227-28; Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2001).

Defendants ask the court to revisit its original decision with respect to plaintiff's failure to exhaust his administrative remedies. Defendants contend that two new

8

pieces of discovery support their position. First, they note that plaintiff had access to paper and the box in which grievance forms were to be deposited; in other words, while plaintiff's requests for a grievance form may have been denied, he had paper on which to write out his complaint and he could have placed that complaint in the appropriate box in a timely manner. (D.I. 167 at vii, 8-10) The court will not revisit its previous ruling. As the court stated in its prior opinion, "a failure to exhaust administrative remedies is 'excused if there was a failure to provide grievance forms.'" *Abraham v. Costello*, 717 F. Supp. 2d 391, 395 (D. Del. 2010) (citing *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003)). Furthermore, "[i]f prison authorities thwart [an] inmate's efforts to pursue [a] grievance, administrative remedies may be presumed exhausted, as no further remedies are 'available' [to the inmate]." *Abraham v. Costello*, 717 F. Supp. 2d 391, 395 (D. Del. 2010) (citing *Brown v. Croak,* 312 F.3d 109, 112-13 (3d Cir. 2002)). Because plaintiff alleges that he was denied the ability to comply with the required grievance procedures - a procedure that explicitly requires the use of Form #584[7] - a genuine issue of material fact exists and, therefore, the court declines to grant summary judgment for the defendants on this issue.

Defendants also point out that plaintiff refused to speak with investigators. (D.I. 167 at 8) In light of this, defendants argue that administrative remedies were not properly exhausted. (*Id.*) Although this admitted fact may be relevant evidence for a

---

[7] "The IGP process begins," i.e., is triggered, "when an inmate files **Form #584**. The grievant **must complete this form** within 7 calendar days following the incident." (D.I. 100 at 9) (emphasis added)

jury to consider,[8] summary judgment remains inappropriate.

## V. CONCLUSION

For the reasons discussed above, the court denies defendants' motion for summary judgment. An appropriate order shall issue.

---

[8] From the record presented, these DDOC internal investigators did not appear to be meeting with the plaintiff in the context of the IGP process (see D.I. 100 at 9) (discussing the IGP resolution levels); their visit appears to have been made in a context outside of the administrative review process.

10