# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH ABRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-593-SLR |
| | ) |
| LT. COSTELLO and | ) |
| OFFICER CPL. MANN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

WHEREAS, this matter having come before the court to adjudicate the

affirmative defense asserted by defendants of whether plaintiff exhausted

administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42

U.S.C. § 1997e(a); and

WHEREAS, having held an evidentiary hearing on March 27, 2013, at which the

parties had the opportunity to present documentary evidence and testimony and,

subsequently, filed supplemental closing statements;

THEREFORE, at Wilmington this 6th day of November, 2013, for the reasons

that follow, the court finds that plaintiff exhausted his administrative remedies:

1. **Background.**[1] Plaintiff[2] alleges that on May 10, 2007, he was assaulted by defendants Officer Cpl. Mann and Lt. Costello at the Sussex Violation of Probation facility ("SVOP"). (D.I. 2) Plaintiff did not file a grievance because the requisite form was unavailable to him. Instead, plaintiff wrote letters to the SVOP Warden and to DOC Commissioner Danberg, informing them of the alleged assault. Commissioner Danberg ordered an Internal Affairs ("IA") investigation into plaintiff's assertions. Following the completion of the investigation, plaintiff, proceeding pro se, filed this lawsuit pursuant to 42 U.S.C. § 1983.

2. Defendants moved for summary judgment, arguing, inter alia, that plaintiff failed to exhaust his administrative remedies as required by the PLRA. (D.I. 98) By opinion and order dated June 11, 2010, the court denied defendants' motion for summary judgment finding that plaintiff was excused for his failure to exhaust administrative remedies inasmuch as he was not provided grievance forms, despite his repeated written and oral requests. (D.I. 105, 106)

3. Subsequently, the parties engaged in the exchange of discovery and a member of the Federal Civil panel entered his appearance on behalf of plaintiff. On August 10, 2011, a scheduling order was entered, setting deadlines for discovery, dispositive motions, referral to mediation and a pretrial and trial date. (D.I. 136)

---

[1]This background is a summary of the court's previous articulations of the factual background and procedural posture of the case. (D.I. 105, 178)

[2]Plaintiff commenced his incarceration within the Delaware Department of Correction ("DOC") on January 3, 2007. (D.I. 105)

2

4. Following the completion of discovery, defendants filed a second motion for summary judgment, asserting that plaintiff did not fully exhaust his administrative remedies because he refused to cooperate with IA investigators. On May 17, 2012, the court denied their motion, concluding there were genuine issues of material fact for a jury to resolve on the issue of whether plaintiff exhausted. (D.I. 178)

5. At the August 15, 2012 pretrial conference, the issue of exhaustion was raised, again, and supplemental briefing was ordered. The jury trial set for August 27, 2012 was cancelled. (D.I. 177) The parties conducted additional depositions and exchanged supplemental interrogatories. (D.I. 199, 200, 211) By order dated February 11, 2013, an evidentiary hearing was scheduled in order for the court, rather than a jury, to decide whether plaintiff had exhausted his administrative remedies pursuant to the PLRA. (D.I. 220)

6. **PLRA.** Congress enacted the PLRA in an effort to curb the number of prisoner filings in the federal courts. *Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Failure to exhaust is an affirmative defense that the defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Moreover, the defendant must demonstrate that the prisoner failed to exhaust each of his claims. *Id.* at 220-24.

3

7. Exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge, even if that determination requires the resolution of disputed facts. *Small* , 728 F.3d at 269-271. In so doing, the court must first determine whether administrative remedies were available to plaintiff. "'Availability may sometimes turn on questions of fact' and 'available means capable of use, at hand.'" *Smith,* 728 F. 3d at 271 (citations omitted).

8. Next, the court must consider whether the inmate completed the "administrative review process in accordance with the applicable procedural rules" that are "defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. The Third Circuit has held that "'to complete the administrative review process" means "substantial" compliance with the prison's grievance procedure. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) (citing *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000)). Prison grievance procedures establish the yardstick for determining what steps are required for exhaustion. *Williams v. Beard,* 482 F.3d 637, 639 (3d Cir. 2007).

9. There is no futility exception to the PLRA's mandatory exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d at 71. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

10. An inmate will not be held to strict compliance with this exhaustion requirement, however, if the actions of prison officials directly caused or contributed to

4

the inmate's procedural default on a grievance. *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000); *Mack v. Curran*, 457 Fed. Appx. 141, 145 (3d Cir. 2012) (unpublished) ("We have recognized certain circumstances prevent the timely pursuit of the prison grievance process, thereby making the administrative remedies unavailable"); *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedies unavailable where prison officials gave inmate erroneous instructions about grievance process). Prison officials "may waive the exhaustion requirement if the ultimate administrative authority fully examines the inmate's complaint on the merits, regardless of whether the complaint complied with the prison grievance process." *McKinney v. Guthrie*, 309 Fed. Appx. 586, 588 (3d Cir. 2009) (unpublished).

11. **Evidentiary Hearing.** At the March 27, 2013 evidentiary hearing, defendants presented testimony from: (1) Corporal Matt Dutton, the Inmate Grievance Chair ("IGC") at James T. Vaughn Correctional Center where plaintiff was transferred on May 16, 2007; (2) Deputy Warden Robert May, the IGC at Central Violation of Probation where plaintiff was housed from May 14-16, 2007; (3) Staff Lieutenant Dean Blades, the IGC at SVOP where plaintiff was housed at the time of the alleged assault, May 10, 2007, until May 14, 2007; and (4) plaintiff. (D.I. 226 at 3)

12. **Inmate Grievance Procedure.** Department of Correction Policy 4.4 ("the Policy") establishes a three-level Inmate Grievance Procedure ("IGP"). (JX 1) The stated purpose of the IGP is to "reduce tension in correctional facilities and to effectively resolve the vast majority of cases" by affording inmates an avenue to resolve any problems prior to filing in the court system. (*Id.* at DOC001192; D.I. 226 at 73)

5

This administrative remedy must be followed for all grievances, except for those having separate mechanisms for appeal.[3]  (*Id.* at 11, 73; JX 1 at DOC001193) Copies of the IGP "shall be available in each institutional housing unit, in each library, in each counselor's office, and in each Inmate Grievance Chair ("ICG") office." (JX 1 at DOC001193)

13.  The Policy requires that an inmate file a Form 584[4] within seven calendar days following the incident. (D.I. 226 at 84) The inmate must forward the form to the IGC. (JX 1 at DOC001196) The Policy, also, does not state that any other writing, besides Form 584, is acceptable to start the grievance process. (D.I. 226 at 83-84) The seven-day filing deadline is mandatory, as the Policy does not provide for late submissions. (*Id.* at 84)

14.  In 2007, complaints about staff issues, including excessive force, were considered non-grievable, e.g., there was no further action taken by the IGB or the IGC. (*Id.* at 31-32) Some staff issue grievances were accepted and others were returned to the inmate with instructions to write to the Warden or a supervisor. (*Id.* at 33) The decision to accept or return a grievance was entirely discretionary and not written in the Policy. The Policy does not detail how non-grievable complaints about staff conduct, such as excessive force, are to be handled or appealed. The Warden of the institution would ultimately decide whether to initiate an investigation into the inmate's allegations

---

[3]Disciplinary, classification and parole are specifically excluded. (JX 1 at DOC001193)

[4]Form 584 is used for all grievances, except medical grievances which use Form 585. (D.I. 226 at 12) Unless otherwise specified, the focus of this discussion is on Form 584.

6

of staff misconduct. (*Id.* at 61-62; 39-42)  The protocol for all incidents of excessive force would be to initiate an investigation. (*Id.* at 62)

15. The Policy further provides that, if the IGC is unable to informally resolve the problem, the unresolved grievance is referred to Level II administration. (JX 1 at DOC001196)  At Level II, the Resident Grievance Committee convenes a hearing and forwards its recommendation to the Warden.  If the grievance remains unresolved, it proceeds to Level III, where the Bureau Grievance Officer conducts the final level of review. (JX 1)  If an inmate does not cooperate with an investigation into a grievance, the grievance process would end. (D.I. 226 at 82)

16. **SVOP.** In the Sussex Community Corrections Center Offender Orientation Manual, inmates are instructed to follow the IGP, except in matters related to "[c]omplaints about staff conduct." (JX2 at 20)  More specifically, staff complaints "are to be hand delivered to the secure mailbox of the Warden in each unit in letter form for investigation.  They are not an issue for the grievance system." (*Id.*; D.I. 226 at 74, 88)  Inmates are not required to file a Form 584 when complaining about staff excessive force. (D.I. 226 at 88, 90)  Inmates are further advised that "[m]isuse, falsifications and repeated use of the grievance system for which it was not intended will result in Disciplinary Action." (JX2 at 20; D.I. 226 at 88-90)

17. At SVOP, IGC Blades had an informal policy of accepting grievances that were submitted after the seven-day period. (D.I. 226 at 83-84)  Blades also accepted grievances that were written on something other than Form 584.  Blades acknowledged that the Policy did not grant him the authority to accept late or non-conforming forms,

but did so at his discretion. This informal practice was not communicated either by writing or verbally to all SVOP inmates.

18. Letters submitted in the Warden's mailbox went directly to the Warden. (*Id.* at 88) The IGC would not review these letters. The Warden was responsible for determining follow-up on the grievance. He might order an IA investigation or other type of inquiry; rarely would the Warden refer the matter to the IGC. (*Id.* at 89-90)

19. Although the SVOP manual instructed otherwise, inmates would file grievances for staff complaints, including excessive force. IGC Blades logged these forms in the grievance log book and returned them to the inmate as non-grievable. (*Id.* at 81) It was Blades' practice to return the form and instruct the inmate to write a letter directly to the Warden and drop it in the Warden's secure mailbox. (*Id.* at 90)

20. At SVOP, grievance forms, as well as library requests, sick call slips and visit requests, were stacked together in vertical boxes on racks located at the east and west sides of the building. (*Id.* at 75) Certain inmates were responsible for replenishing the supply of forms. The SVOP did not have a written procedure or schedule for restocking or checking on the supply of forms. (*Id.* at 95)

21. **Alleged Assault**. Following the alleged assault on May 10, 2007, plaintiff asked correctional officers, approximately five times, for a Form 584.[5] (*Id.* at 98-100) Plaintiff also submitted two written requests for grievances forms. (*Id.* at 116) During the seven-day filing period, plaintiff did not receive a Form 584. After the seven days elapsed, plaintiff stopped asking for forms because he was told (by fellow inmates) that

---

[5]During his testimony, plaintiff did not identify the correctional officers.

8

a late filed grievance would not be accepted or would be denied as untimely. (*Id.* at 137) Plaintiff was unaware of the informal practice of accepting non-conforming or untimely grievances. (*Id.* at 138) Plaintiff reiterated that he did not file a grievance because he could not obtain a Form 584.[6]

22. Plaintiff wrote two letters about the incident to the SVOP Warden, dated May 10, 11 or 12.[7] (*Id.* at 120-126) The SVOP Warden did not reply to plaintiff.

23. Plaintiff also wrote to Commissioner Danberg on May 11, 2007 (marked as received on May 17, 2007).[8] (JX 21) In this letter, plaintiff advised that he put a "note in Warden George's box requesting: (1) the address for [the United States Attorney for the District of Delaware]; and (2) to file criminal charges against [defendants] Costello and Mann." (*Id.* at DOC001360) He alleged that defendants "sprayed and physically attacked [him] without provocation or cause." (*Id.*) By letter dated June 19, 2007, Commissioner Danberg acknowledged receipt of plaintiff's letter and provided the address for the United States Attorney. (*Id.* at DOC001364)

24. In a June 18, 2007 letter to Commissioner Danberg, plaintiff repeated his request to speak with State Police or the FBI about the alleged assault. (*Id.* at DOC001365) Commissioner Danberg replied to plaintiff on July 5, 2007, as follows:

---

[6]Contemporaneously, plaintiff wrote seven sick call slips requesting care for, among other things: medication, prescription information, mental health consultation, testing, internal bleeding and heart pain. (JX 30) Sick call slips are not considered part of the grievance procedure. (D.I. 226 at 79) Plaintiff submitted one medical grievance on May 14, 2007. (D.I. 226 at 79: JX 7)

[7]Plaintiff was unable to recall the exact date of the letters.

[8]This two page letter was written on the back sides of two sick call slips. (JX 21)

9

I am in receipt of your letter dated June 19th.
We are reviewing your allegations; however, if you want to contact
the FBI or State Police, you are welcome to do so. I am not in a
position to require them to visit you.

(*Id.* at DOC001367)

25. Two Internal Affairs investigators met with plaintiff on August 2, 2007. (D.I.

226 at 117) Plaintiff told the investigators that he had nothing to discuss with them or

add to the detailed letters about the alleged assault written to the SVOP Warden and

Commissioner Danberg. (*Id.* at 119) Plaintiff requested that the IA investigators

summon the FBI or State Police, as plaintiff was willing to discuss the incident with

them. As a result, the investigators ended the meeting. The investigators did not advise

plaintiff that this would be his only opportunity to speak with them or that the

investigation would terminate if plaintiff did not cooperate. (*Id.* at 126)

26. On September 20, 2007, Commission wrote plaintiff the following:

Your allegation of abuse by officers at SVOP dated May 11,2007 was
forwarded to Internal Affairs [on] June 27th for investigation.
After a very lengthy and thorough investigation, Internal Affairs finds (sic)
indicate that your allegations were unfounded.

(JX 21 at DOC001368)

27. **Discussion.** Having considered the record developed at the hearing

against the authority recited above, the court finds that plaintiff exhausted his

administrative remedies by writing letters to the SVOP Warden. It is undisputed that

the SVOP Manual specifically removes complaints about excessive force from the

grievance procedure and mandates that such complaints be submitted in letter form to

10

the SVOP Warden.  Blades' testimony further confirmed that this written policy was followed and enforced.

28.  The record reflects that defendants had notice of plaintiff's contention of having mailed letters to the SVOP Warden, consistent with the procedure for excessive force complaints outlined in the SVOP Manual.  Defendants presented no evidence to refute this contention.[9]  Therefore, defendants have not carried their burden of demonstrating that plaintiff failed to exhaust his administrative remedies pursuant to the PLRA.[10]

29.  Moreover, the court finds no support in the record to demonstrate that plaintiff's failure to cooperate with IA investigators thwarted their efforts to address the problem before being sued in federal court.  Specifically, the letters written by Commissioner Danberg reflect that an IA investigation was initiated in response to plaintiff's letter about the incident.  After several months, the Commissioner wrote plaintiff advising that his allegations were unfounded "after a very lengthy and thorough investigation" by IA.  Nothing in these letters suggest that plaintiff's meeting with IA or his conduct with IA affected the investigation in any manner.

30.  IT IS FURTHER ORDERED that a telephonic status conference shall be

---

[9]Although plaintiff requests attorney fees and costs for having to litigate an issue that defendants knew or should have known was untenable, the court finds, at this juncture, such an award unwarranted.  (D.I. 224)

[10]In light of this finding, it is unnecessary for the court to examine the alternative arguments regarding whether plaintiff had access to Form 584 or whether plaintiff should be excused from the exhaustion requirement.

11

held on November 21, 2013 at 5:00 p.m. with plaintiff's counsel initiating said call.

United States District Judge